# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RCB INTERNATIONAL, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> LABBEEMINT, INC., <br><br> Defendants. | NO. 1:16-cv-03109-SAB <br><br> **ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment and an Injunction, ECF No. 65, Defendant's Cross-Motion for Summary Judgment, ECF No. 93, and the parties' respective motions to seal certain exhibits pertaining thereto, ECF Nos. 72, 99. The Court held a hearing on the motions on May 10, 2017, in Yakima, Washington. Plaintiff was represented by Jeffrey Love and Beth Wehrkamp; Defendant was represented by Shannon Jost and Jacob Zuniga. The Court took the motions under advisement. For the reasons set forth herein, the Court grants, in part, and denies, in part, Plaintiff's Motion for Summary Judgment and an Injunction, ECF No. 65, denies Defendant's Cross-Motion for Summary Judgment, ECF No. 93, and denies the parties' motions to seal, ECF Nos. 72, 99.

**FACTS**

Plaintiff RCB International, Ltd. (RCB) and Labbeemint, Inc. (Labbeemint) are competitors in the essential oil market, both selling and distributing mint oils and blends. For several years, RCB has been propagating a variety of low menthol

mint plant, *Menthe spicata L.* (Erospicata), the only proprietary plant that RCB works with. Erospicata mint plants are propagated by dividing, expanding, and replanting existing root stock; for example, by digging established mint from the ground, separating it out, and planting it into more soil. Propagation is possible from just one plant or even one piece of germplasm, as in a single leaf or specimen in a petri dish.

RCB was the exclusive licensee of the Erospicata mint plant during the patent term and was able to exclusively market and sell Erospicata oil between 1995 and 2012. George Sturtz (Sturtz), the inventor of the Erospicata plant, plant patent no. 8,645, deposited Erospicata plant materials with the United States Department of Agriculture National Clonal Germplasm Repository in Corvallis, Oregon under accession number MEN625. However, before the plant patent expired, John Wendel of RCB asked Sturtz to check with the Corvallis Repository to see if they still had any Erospicata plants available, and if so, to remove the material because he didn't want any plant material available after the expiration of the patent. The plant patent expired in October 2012.

Before and after the expiration of the plant patent, RCB has maintained several contracts with growers and select universities, the admitted purpose of which is to preserve RCB's exclusive rights to propagate, grow, and distribute the Erospicata plant and oil. These contracts specify that RCB owns the Erospicata plants and prohibit growers and universities from selling or transferring the plant or its cuttings to any third party.

*2014 Acquisition.* Despite RCB's efforts to maintain sole possession of the Erospicata plant, Labbeemint obtained a few plantlets in April 2014. At the time of the acquisition, Labbeemint was not aware of the exact source of the plants but it did know that the plant patent was expired and believed the plant to be in the public domain. The record demonstrates that Jason Stromme (Stromme), a Labbeemint employee at the time, traveled from White Swan, Washington to

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 2

Helena, Montana where he received the plant from Rocky Lundy (Lundy), a friend and colleague. Stromme did not pay for the plant material and there was no written agreement governing the transfer. In turn, Lundy testified that he obtained the plant from a technician that maintains the germ plasma repository at Purdue University. Lundy did not remember the name of this technician, but contacted the technician through Dr. Stephen Weller in March of 2014.

On July 25, 2016, RCB's attorney sent an email to Purdue University representatives regarding a Material Use Agreement for the Erospicata plant entered into on November 6, 2006. RCB's attorney requested confirmation that the university did not transfer any part of the plant to a third party and requested information as to whether the university still had the plant in its possession. On July 25, 2016, Laurie Kuhl at Purdue University informed RCB's attorneys that Dr. Weller did not distribute the Erospicata mint plant to anyone and that the university had destroyed the mint plants after they were finished with them, approximately two years prior. Kuhl stated that she "put all the plants in an autoclave which killed all plant parts." ECF No. 102.

*2016 Acquisition.* Labbeemint obtained the plant a second time in May 2016 when Craig J. St. Hilaire (St. Hilaire), president of Labbeemint, observed what he believed to be Erospicata plants growing in an uncultivated field near his home. Because the field was uncultivated, the Erospicata plants were mixed with other plant materials; St. Hilaire's impression was that the field was not currently being farmed. Subsequently, Labbeemint representatives asked the landowner, who has not been identified for the purposes of these motions, for permission to enter the property to determine whether the plants were in fact Erospicata, and if so, for permission to dig a few roots in order to preserve them. The landowner gave Labbeemint her consent to enter the property, at which point Labbeemint confirmed that the plant was Erospicata and dug a few roots that St. Hilaire planted in a separate planter. St. Hilaire maintains those plants to date, allowing

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 3

them to expand naturally within the planter.

*2017 Acquisition.* Again in March 2017, St. Hilaire observed that no field work, tillage, or herbicide spraying had occurred on the uncultivated field, and he presumed that there could still be viable rootstock growing on the property. A Labbeemint representative again asked the landowner for permission to enter the property and dig roots if Erospicata was growing in the field. The landowner gave her consent and Labbeemint entered the property and dug Erospicata rootstock that St. Hilaire planted in a separate planter. He continues to maintain those plants. To date, Labbeemint has not propagated the Erospicata plants obtained in 2016 and 2017. Labbeemint has engaged a propagator to generate plantlets from the Erospicata plant obtained in 2014 and has paid the propagator in connection with those services.

With regard to the 2016 and 2017 acquisitions of Erospicata by Labbeemint, Ryan Ferguson, a grower, is an owner, member, and manager of Ferguson Farms, LLC (Ferguson Farms). Ferguson Farms entered into contracts with RCB on July 22, 2008 and October 27, 2012, pursuant to which Ferguson Farms has grown Erospicata mint plants and distilled Erospicata mint oil. The contracts at issue provide that RCB owns the Erospicata mint plants, cuttings, seed, and progeny that Ferguson Farms grows. For the past fifteen years, Ferguson Farms has been farming certain land in Yakima Valley that is currently owned by members of the Yakama Nation Indian Tribe. Most recently, Ferguson Farms had a five-year lease on the land where St. Hilaire viewed the Erospicata plant growing; the lease was not renewed on or about March 2015. Ferguson continues to have discussions with the leasing agent for the land in an effort to renew the lease and farm the land.

After Ferguson Farms cut and processed the Erospicata plants in 2015, it disked the land in an effort to kill the remaining Erospicata plant material. However, not all of the plant material was killed. Ferguson Farms sought permission to enter the land in early 2016 to apply an herbicide in an effort to kill

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 4

the remaining Erospicata, but the landowner refused permission. As a result, some Erospicata plants continue to grow on the land. Ferguson Farms and RCB continue to seek permission from the landowner to either farm Erospicata on the land or to enter the property and apply an herbicide to destroy it.

In 2016, RCB learned that Labbeemint possessed the Erospicata plant, and the parties engaged in negotiations. During negotiations, RCB claimed that it owned and exclusively controlled the plants in Labbeemint's possession and demanded that Labbeemint destroy them. Alternatively, RCB suggested that it might be willing to sell Labbeemint Erospicata mint oil at a premium. Labbeemint rejected the proposal, contending that the plant had moved into the public domain after the expiration of the plant patent. This lawsuit was initiated on April 14, 2016.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, discovery, and affidavits demonstrate there is no genuine issue of material fact *and* that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325; *see also Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) ("[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits.").

When considering a motion for summary judgment, the Court neither weighs evidence nor assesses credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. When relevant facts are not in dispute,

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 5

summary judgment as a matter of law is appropriate, *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), but "[i]f reasonable minds can reach different conclusions, summary judgment is improper." *Kalmas v. Wagner*, 133 Wn. 2d 210, 215 (1997).

### ANALYSIS

### Labbeemint's Motion for Summary Judgment

**1. Preemption**

On August 2, 2016, Labbeemint filed a Rule 12(b)(6) Motion to Dismiss RCB's First Amended Complaint, ECF No. 34, on the ground that RCB's claims are preempted by the Plant Patent Act (PPA), 35 U.S.C. §§ 161-164. The Court denied Labbeemint's motion to dismiss, holding that "[t]he federal patent laws do not preempt the laws of private property, theft, and conversion." ECF No. 50. The Court noted that in order to succeed on its claims for conversion and equitable relief, RCB must necessarily demonstrate that Labbeemint unlawfully obtained the Erospicata rootstock or cuttings. Because the PPA does not require proof of unlawful conversion, RCB's state law claims require proof of an element not shared with federal law. Thus, no preemption can result.

In its motion for summary judgment, Labbeemint again contends that each of RCB's claims are preempted by the PPA because the relief sought by RCB falls squarely within the realm of patent. RCB argues that the Court's prior ruling on the preemption issue is law of the case. Law of the case is the doctrine that a court is "generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in an identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (citing *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). "While courts have some discretion not to apply the doctrine of law of the case, . . . that discretion is limited." *Id.* at 155. Depending on the nature of the case or issue, "a court may have discretion to reopen a previously resolved question under one or more of the following

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 6

circumstances: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; (5) a manifest injustice would otherwise result." *Id.* (citing *Milgard*, 902 F.2d at 715).

The Court finds that none of the five enumerated reasons to revisit the preemption issue are present here; Labbeemint does not argue otherwise. Nonetheless, Labbeemint contends that because RCB seeks to enforce the same rights granted by the PPA, its claims must be preempted. However, the preemption analysis does not revolve around the relief sought by the parties. Federal patent law does not preempt state law claims if such claims contain "an element not shared by the federal law; an element which changes the nature of the action 'so that it is *qualitatively* different from a copyright [or patent] infringement claim.'" *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-30 (9th Cir. 1993) (quoting *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal. App. 3d 1327, 1340 (1990)). The focus of the preemption analysis is on the elements of the cause of action, not the relief requested.

The primary issue in this case is whether Labbeemint willfully interfered with RCB's Erospicata mint plant without lawful justification. The PPA does not require proof of willful unlawful interference. Thus, the law of patent and the law of property can coexist. Although an invention does become public domain after the patent term expires, ownership of the property continues. For example, a utility patent must include designs and specifications detailed enough to enable a third party to build or replicate the patented invention after the patent term expires. But that third party has no right to convert the invention in the possession of the inventor simply because the patent expired. Similarly, the PPA mandates that the plant be described in the plant patent, but such a description does not help a third party (in this case, Labbeemint) obtain physical possession of the plant or provide justification for conversion.

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 7

In sum, the Court's ruling that RCB's claims are not preempted by the PPA is law of the case. Labbeemint's Motion for Summary Judgment, ECF No. 93, as it relates to preemption is **denied**.

## RCB's Motion for Summary Judgment and an Injunction

**1. Conversion and Replevin**

RCB claims that it owns the Erospicata plants in Labbeemint's control and that Labbeemint converted the plants. Accordingly, RCB seeks return of the plants through a replevin action. Labbeemint's primary defense is that RCB's claims are preempted by the PPA and that the plants must be made available for public use after patent expiration. The Court has already rejected this argument. Alternatively, Labbeemint argues that RCB has not been deprived of specific, identifiable property or that there are genuine issues of material fact precluding summary judgment.

"A conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Pub. Util. Dist. No. 1. Of Lewis Cnty. v. Wash. Pub. Power Supply Sys.*, 104 Wn.2d 353, 378 (1985) (citing *Judkins v. Sadler-Mac Neil*, 61 Wn.2d 1, 3 (1962)). "Proof of the defendants' knowledge or intent are not essential in establishing a conversion." *Judkins*, 61 Wn.2d at 3. "Absent willful misconduct, the measure of damages for conversion is the fair market value of the property at the time and place of conversion." *Merchant v. Peterson*, 38 Wn. App. 855, 858 (1984). Fair market value is "the value for which the property could have been sold in the course of a voluntary sale between a willing buyer and a willing seller, taking into account the use to which the property is adapted or could reasonably be adapted." *Id.* at 859.

"A replevin action is essentially one to determine title to, or right of possession of, personal property and not one to determine claims sounding in

tort." *Apgar v. Great Am. Indem. Co.*, 171 Wash. 494, 498 (1933). A plaintiff bringing a replevin action must show:

> (a) That the plaintiff is the owner of the property or is lawfully entitled to the possession of the property by virtue of a special property interest . . .;
> (b) That the property is wrongfully detained by defendant;
> (c) That the property has not been taken for a tax, assessment, or fine pursuant to statute . . .; and
> (d) The approximate value of the property.

*Graham v. Notti*, 147 Wn. App. 629, 634-35 (citing WASH. REV. CODE § 7.64.020(2)). In replevin, the plaintiff "asserts a continuing ownership in himself; he seeks a return of his goods, and damages for the interruption to his possession." *Hoff v. Lester*, 25 Wn.2d 86, 93 (1946).

The crucial question in this action is whether Labbeemint willfully interfered with RCB's possession of its Erospicata plants without lawful justification. On that issue, the material facts are in dispute.

*2014 Acquisition.* At the time Labbeemint obtained the Erospicata plantlets in 2014, it was not exactly sure from where the plants came. The record demonstrates that Lundy told Stromme that the plants would be coming from Purdue University. Stromme drove to Helena, Montana to receive the plants from Lundy. Stromme then provided the plants to Labbeemint. Lundy testified that he received the Erospicata plants from a technician that maintains the germ plasma repository there, but did not recall the name of the technician; he met this technician through Dr. Weller. When RCB's attorneys reached out to representatives at Purdue asking whether they had any plants left in their possession or whether they had transferred any of the Erospicata plant, representatives from the university flatly denied that they had given or distributed any Erospicata plants to any third party. Indeed, Kuhl stated that the university had killed all of the plants in its possession, approximately two years prior.

//

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 9

Based on the present record, the Court cannot make a factual determination whether or not Labbeemint willfully interfered with RCB's possession of the Erospicata plant without lawful justification as to the 2014 acquisition. Although Labbeemint claims a lack of knowledge from where the plants came in 2014, a Labbeemint employee testified that he knew that the plants would be coming from Purdue University through Lundy. Additionally, which actions, if any, Labbeemint took to obtain the plant are not before the Court. The Court cannot determine whether Labbeemint willfully interfered with RCB's possession of the Erospicata plants or whether the plants were obtained through lawful means. Accordingly, RCB's motion is **denied** in this respect.

*2016 and 2017 Acquisitions.* RCB relies on *Rudy-Patrick Co. v. Dela Cost Farming Co.*, 16 Wn. App. 911 (1976) for the proposition that it owns the plants that Labbeemint acquired from a field in 2016 and 2017. In *Rudy-Patrick*, plaintiff entered into a "Seed Production Agreement" with defendant Dela Costa Farming Company (Dela Costa) for the production of Titan alfalfa seed, a unique variety exclusively owned and marketed by plaintiff. Under this agreement, plaintiff was required to supply Dela Costa with Titan alfalfa seed to grow crops from 1971 through 1974. Dela Costa was required to deliver the annual seed crop exclusively to plaintiff and to "destroy the plants on the termination date of the agreement." *Id.* at 912. The agreement further provided that title to the foundation seed and all resulting plants and annual seed crop would remain in the plaintiff. *Id.* Mr. and Mrs. Hanke were the sole shareholders of Dela Costa, and leased 82 acres of their land to the company for the planting of the Titan alfalfa seed. After a crop failure in 1971, Dela Costa became insolvent and the Hankes terminated the lease. Subsequently, the Hankes leased the land to Robert Mathias and his wife, and delivered them a copy of the Seed Production Agreement. *Id.* However, the Mathiases delivered the 1972 seed crop to another company, whereupon the plaintiff brought a replevin action to recover the crop. By agreed order in that

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 10

action, plaintiff paid the amount due the Mathiases under the Seed Production Agreement and obtained possession of the crop. *Id.* at 912-13.

The Hankes sold their farmland in 1972, including the 82 acres of growing Titan alfalfa, to four corporations known as Rattlesnake Farms. *Id.* at 913. There were no restrictions or reservations regarding the plants or seed crop contained in the deed. *Id.* Rattlesnake Farms was not a party to the underlying action. The Mathiases continued to lease and farm the land at issue from Rattlesnake Farms. The 1973 seed crop was commingled with uncertified seed from other acreage and sold as "Washington Common" for $1 per pound. *Id.* Throughout the 1972 and 1973 crop year, plaintiff continued to assert their ownership, which was known to the Mathiases, and the trial court found that the plants and seed crop were the property of plaintiff, and that the Mathiases willfully converted the 1973 seed crop. *Id.*

On appeal, the defendants argued that the forfeiture of the Dela Costa-Hanke lease transferred title to the growing plants and crops to the Hankes as owners of the real property. The court of appeals disagreed stating that "[r]eal property may belong to one person and the crops to another even without actual severance." *Id.* at 914. Thus, the court concluded that as between Dela Costa and plaintiff, the Titan alfalfa plants and resulting seed crop were personalty owned by plaintiff, as evidenced by the Seed Production Agreement. *Id.* Moreover, the court held that the ownership of the plants and crops by plaintiff constituted a constructive severance from the real property, and that title to the plants and crop did not pass to the Hankes, who had knowledge of the Seed Production Agreement, by forfeiture of the Dela Costa lease. *Id.* at 915. Notably, with regard to the new landowner, Rattlesnake Farms, the court noted that it was not a party to an action, thus, its knowledge or rights to the plants were not before the court.

The matter before the Court is distinguishable from *Rudy-Patrick* because the unidentified landowner here did not lease the land to a third party who began

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 11

selling the plant after Ferguson Farms lost its lease. It is likewise distinguishable insofar as the record is unclear whether or not the landowner had notice of the contract between Ferguson Farms and RCB when she gave consent to Labbeemint to enter the field and remove Erospicata rootstock. The landowner is not a party to this action and thus its rights to the Erospicata plant growing in its field is not properly before the Court. Moreover, the record is not clear as to when, or if, Labbeemint had knowledge of the contract between Ferguson Farms and RCB. Accordingly, the Court cannot determine from the present record whether Labbeemint willfully interfered with RCB's possession and ownership of the plant, or whether it had lawful justification to do so. Because genuine issues of material fact exist, RCB's motion for summary judgment on its conversion and replevin claims are **denied**.

*Abandonment Defense.* RCB also moves for summary judgment against Labbeemint's abandonment affirmative defense. "Abandonment of property is a complete defense to the tort of conversion." *Lowe v. Rowe*, 172 Wn. App. 253, 263 (2012) (citing *Jones v. Jacobson*, 45 Wn.2d 265, 267 (1954)). It is also a complete defense in a replevin action. *See, e.g.*, *Bensch v. Dixon*, No. 31149-o-III, 2013 WL 6244521 (Dec. 3, 2013 Wn. App.). "Abandonment of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership." *Ferris v. Blumhardt*, 48 Wn.2d 395, 403 (1956). It must be proved by "clear, unequivocal and decisive evidence," and the primary element is "an actual intent to relinquish or part with the right or rights claimed to be abandoned." *Shew v. Coon Bay Loafers, Inc.*, 76 Wn.2d 40, 50 (1969).

The record demonstrates that Ferguson Farms has continued to seek permission from the landowner to gain access to the previously-leased land in order to apply an herbicide to kill the remaining Erospicata plants; the landowner has refused. RCB and Ferguson Farms have likewise been working with a leasing agent for the field in order to renew the lease. Labbeemint has submitted evidence

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** ÷ 12

that its personnel have not observed any efforts to eradicate the Erospicata plant, leading to the conclusion that RCB has intentionally abandoned the plant. The contradictory evidence here establishes genuine issues of material fact from which a jury could reasonably infer that RCB abandoned the plant in the field. Accordingly, RCB's motion for summary judgment as to Labbeemint's abandonment defense is **denied**.

**2. Declaratory Judgment**

RCB seeks a declaratory judgment that Labbeemint lacks legal title to the Erospicata plant stock in its possession or control, and that RCB is the rightful legal and equitable owner of the plant stock. RCB further seeks a declaration that it is entitled to have all of the plant stock in Labbeemint's possession destroyed, or alternatively, returned at Labbeemint's expense. ECF No. 31. The Declaratory Judgment Act provides that "upon the filing of an appropriate pleading, [the court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).

Based on the Court's ruling on RCB's conversion and replevin causes of action, the Court **denies** RCB's motion for summary judgment on its declaratory judgment claim. There are genuine issues of material fact as to how Labbeemint acquired the plant and whether it did so through lawful means.

**3. Injunction**

RCB seeks a permanent, or preliminary, injunction that prohibits Labbeemint from selling, distributing, or otherwise allowing to leave its possession and control of Erospicata mint plants and cuttings; requires Labbeemint to provide adequate security for the plants until this lawsuit is resolved; and orders Labbeemint to account for all Erospicata mint plants in its possession and control, and cause all plant material to be destroyed or returned to RCB at Labbeemint's expense. Labbeemint contends that injunctive relief is

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** ~ 13

inappropriate at this time because genuine issues of material fact exist and that depriving the public access to the Erospicata plant is not in the public interest.

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987). A plaintiff seeking a preliminary injunction must establish (1) likelihood of success on the merits (or in the case of a permanent injunction, success on the merits); (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that the injunction is in the public interest." *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Where a request for a preliminary injunction requires the responsible party to take affirmative action, such as here, it is treated as a mandatory injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Mandatory injunctions are particularly disfavored and the Court "should deny such relief unless the facts and law clearly favor the moving party." *Id.* (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994)) (internal quotation marks omitted).

The Court declines to issue a preliminary injunction at this time. For the reasons stated above, the material facts as to the rightful ownership of the Erospicata plants in Labbeemint's possession are in dispute. Thus, the Court cannot say that the facts and the law "clearly favor" RCB and RCB has failed to show a likelihood of success on the merits. Because the first *Winter* factor is a threshold inquiry, the Court need not consider the remaining *Winter* elements. *Id.* (citing *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)). Accordingly, RCB's motion for a preliminary injunction is **denied**.

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 14

### 4. Labbeemint's Other Defenses

RCB further moves for summary judgment on Labbeemint's other defenses; the Court has already discussed Labbeemint's preemption and abandonment defenses. Its remaining defenses can be consist of three categories: (1) failure to state a claim; (2) equitable defenses of unclean hands, laches, estoppel, waiver, and acquiescence; and (3) damages, mitigation, and adequate remedy at law.

*Failure to State a Claim.* Labbeemint contends that RCB fails to state a claim for which relief may be granted because its claims are preempted by the PPA. The Court has ruled that RCB's claims are not preempted by the PPA. The Court's ruling is law of the case and this defense must fail as a matter of law. RCB's motion for summary judgment as to this defense is **granted**.

*Equitable Defenses.* Labbeemint's equitable defenses are predicated on the fact that RCB failed to move for a preliminary injunction until more than a year after this lawsuit commenced. Labbeemint additionally contends that the record suggests that RCB has allowed at least one third party to obtain Erospicata plants without taking legal action. Thus, Labbeemint requests summary judgment on its equitable defenses be denied in order for it to conduct further discovery. The Court concurs that Labbeemint has raised a genuine issue of material fact as to whether RCB's claims are barred by an equitable defense. RCB's motion for summary judgment on Labbeemint's equitable defenses is **denied**.

*Damages, Mitigation, and Adequate Remedy at Law.* RCB has not moved for summary judgment on its damages claim, but contends that it has a viable damages claim and that injunctive relief is appropriate. Labbeemint suggests that the damage suffered by RCB to date is negligible and based solely on the value of the few plantlets in Labbeemint's possession. The Court **denies** RCB's motion for summary judgment on Labbeemint's damages, mitigation, and adequate remedy at law defenses. It remains to be seen whether Labbeemint can be held liable for conversion of the Erospicata plant and whether RCB has suffered damages as a

result thereof.

## Labbeemint's Counterclaims

### 1. Washington Consumer Protection Act (CPA)

Labbeemint makes counterclaims for violation of the Washington CPA, Wash. Rev. Code §§ 19.86.010-.920, claiming that RCB unlawfully attempted to monopolize the Erospicata mint plant and that RCB engaged in unfair or deceptive practices. RCB filed a motion for summary judgment against these counterclaims. ECF Nos. 65. Labbeemint opposes summary adjudication of its counterclaims stating that there are genuine issues of material fact. Alternatively, Labbeemint moves pursuant to Fed. R. Civ. P. 56(d) to allow additional discovery regarding RCB's anticompetitive activities. Rule 56(d) provides that if the non-movant shows that "for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it."

The Court finds good cause to grant Labbeemint's Rule 56(d) motion and defers ruling on the RCB's motion for summary judgment regarding Labbeemint's counterclaims. By the Court's Scheduling Order, ECF No. 57, the discovery deadline in this case is July 17, 2017 with a dispositive motion deadline of July 25, 2017. ECF No. 57. Labbeemint seeks additional discovery, which it believes will establish that RCB engaged in anticompetitive behavior. Labbeemint is entitled to discovery on its counterclaims.

### 2. Declaratory Judgment

Labbeemint also brings a counterclaim for a declaratory judgment that "upon expiration of the applicable plant patent, the Erospicata mint plant variety was released to the public and must be freely available for public asexual propagation, use, distribution and sale." ECF No. 51. Based on the Court's ruling on the preemption issue, RCB's motion for summary judgment regarding Labbeemint's declaratory judgment counterclaim is **granted**.

## Parties' Motions to Seal

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** ~ 16

RCB and Labbeemint have both filed motions to seal certain documents attached to their respective motions for summary judgment. ECF Nos. 72, 99. In so doing, RCB filed limited publicly available documents in addition to the proposed sealed documents. Labbeemint filed redacted publicly available documents in addition to the unredacted proposed sealed documents.

RCB seeks to seal certain documents because they contain confidential business information that would harm the parties if it became public. ECF No. 72. Specifically, RCB requests that documents that identify the grower and university from whom Labbeemint obtained the Erospicata plant, and the grower and propagator to whom Labbeemint distributed the plant be sealed because, it contends, revealing those identities risk that other competitors will likewise convert the plant. RCB also requests that documents revealing the names of its other growers and the details of its contracts with growers constitute confidential business information.

Labbeemint likewise seeks to seal certain documents on the basis that they contain trade secrets, proprietary business practices, and other commercial activities. ECF No. 99. Specifically, Labbeemint considers information relating to its acquisition, and the identity of key players related thereto, of the Erospicata plant to be highly confidential. Labbeemint contends that the public disclosure of the documents and information at issue would allow competitors an unfair edge in the essential oil market; for example, it would allow competitors to duplicate the parties' practices and use the knowledge derived therefrom to develop competing products.

There are two standards regarding the sealing of confidential documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 677 (9th Cir. 2010). When documents are "attached to dispositive motions," such as those for summary judgment, parties must present compelling reasons for sealing them. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). This is because

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 17

motions for summary judgment determine substantive rights, and the public has a strong interest in knowledge of the way the judicial system adjudicates those rights. *Valley Broadcasting Co. v. U.S. Dist. Ct. for the Dist. of Nev.*, 798 F.2d 1289, 194 (9th Cir. 1986). Otherwise, Fed. R. Civ. P. 26(c) provides that good cause is sufficient to seal records attached to non-dispositive motions. *See also Sullivan v. Prudential Ins. Co. of Am.*, No. 2:12-cv-01173-GEB-DAD, 2012 WL 3763904, at *1 (E.D. Cal. Aug. 29, 2012). This standard generally applies to tangential issues, not core substantive rights.

Motions for summary judgment are at issue in this case. ECF Nos. 65, 93. Despite the parties' conclusion that good cause exists, the parties must show that compelling reasons justify sealing. *Kamakana*, 447 F.3d at 1180. "[A] strong presumption in favor of access to court records" must be overcome by parties wishing to seal such documents. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party may overcome that presumption by supporting their compelling reasons with specific factual findings outweighing the general history of access and disclosure. *Kamakana*, 447 F.3d at 1278-79. The parties have presented no factual findings supporting their contentions that "compelling reasons" outweigh the general history of access and disclosure. Rather, the parties conclude in conclusory fashion that public access to the information at issue could risk competitors gaining an unfair edge in the essential oil business. The Court concludes that without the presentation of compelling reasons, the parties' motions to seal are **denied**.

//
//
//
//
//
//

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 18

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 65, is **GRANTED, in part, and DENIED, in part**.

2. Plaintiff's Motion to Seal, ECF No. 72, is **DENIED**.

3. Defendant's Motion for Summary Judgment, ECF No. 93, is **DENIED**.

4. Defendant's Motion to Seal, ECF No. 99, is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 25th day of May, 2017.



_____
Stanley A. Bastian
United States District Judge

**ORDER RE: PARTIES'CROSS-MOTIONS FOR SUMMARY JUDGMENT** + 19